CIP BB LENDING LLC
c/o CrossHarbor Capital Partners
One Boston Place
Boston, Massachusetts 02108

April 9, 2010

Black Bull Run Development LLC
P.O. Box 10969
Bozeman, MT 59771-0969

Black Bull Golf Course, Inc.
P.O. Box 10969
Bozeman, MT 59771-0969

Re:  Debtor-In-Possession Loan

Gentlemen

Pursuant to our discussions the following is an outline of some of the general terms under which we, on our own behalf or through an affiliate, (the "DIP Lender") would consider providing debtor-in-possession financing (the "DIP Loan") to Black Bull Run Development LLC (the "Development Debtor") as the debtor and debtor in possession in the Chapter 11 Bankruptcy Proceeding pending as Case No. 10-60593 (the "Development Case") in the United States Bankruptcy Court for the District of Montana (the "Bankruptcy Court") and to Black Bull Golf Course, Inc. (the "Golf Course Debtor") as the debtor and debtor in possession in the Chapter 11 Bankruptcy Proceeding pending as Case No. 10-60537 (the "Golf Course Case") in the Bankruptcy Court. It should be understood that these basic terms are only cursorily outlined and are only some of the more important points that would need to be agreed upon and documented in definitive loan documentation approved by the Bankruptcy Court (the "DIP Loan Documentation")[1].

**This summary of terms and the contents hereof are CONFIDENTIAL and shall not be distributed or disseminated by any party referenced herein other than with the prior written consent of CIP BB LENDING LLC**

| Borrower: | Collectively, the Development Debtor and the Golf Course Debtor, each of which shall be jointly and severally liable for the obligations under the DIP Loan. |
|---|---|
| DIP Loan Amount: | Up to $2,600,000. |
| Availability | Up to $340,000 (or such lesser amount as is approved by the Bankruptcy Court) (the "Interim Advance") will be available to be drawn down upon an order of the Bankruptcy Court approving the DIP Loan on an interim basis, containing terms and conditions satisfactory to the DIP Lender in its sole discretion (the "Interim Order"). |

---

[1] In addition to the points addressed herein, the DIP Loan Documentation would contain usual and customary terms and provisions for financings of this type.

1

|  | |
|---|---|
|  | The DIP Lender will fund the Dip Loan on the Closing Date into a collateral account pledged to the DIP Lender and will be disbursed from the collateral account in accordance with the Approved Budget (defined below) and the DIP Loan Documentation. The DIP Lender, upon notice to Borrower, shall have the right to charge against and withdraw from the collateral account all interest, fees and expenses provided for in this Term Sheet and the Loan Documentation, including without limitation, the Commitment Fee and the fees and disbursements of the DIP Lender's legal counsel to the extent approved by the Bankruptcy Court. |
| **Interest Rate:** | Fifteen percent (15%), payable monthly, in cash, in arrears, calculated on an actual/360 day basis. The DIP Loan Amount will include a fully funded interest reserve which reserve will be drawn upon to fund interest due and payable on the DIP Loan.<br><br>During the continuance of any event of default, interest will accrue at the applicable interest rate plus 5.0% per annum. |
| **Commitment Fee:** | $26,000 representing one percent (1%) of the DIP Loan Amount. |
| **Maturity:** | The earliest to occur of (a) nine months from the Closing Date, (b) the confirmation of any plan of reorganization or Section 363 sale pursuant to an order entered by the Bankruptcy Court in either the Development Case or the Golf Course Case, and (c) the acceleration of the DIP Loan in accordance with the terms of the DIP Loan Documentation. In connection with any plan of reorganization, 363 sale or other transfer of the Development Debtor's or Golf Course Debtor's assets, the DIP Loan must be repaid as a condition thereof and the successful purchaser, bidder or otherwise shall not be permitted to take title to the relevant assets subject to the DIP Loan.<br><br>The DIP Loan shall not be subject to amortization. |
| **Use of Proceeds:** | The proceeds of the DIP Loan will be used solely to pay: (i) the post-petition operating expenses of the Borrower as set forth in the Approved Budget; (ii) interest on the DIP Loan; (iii) other costs and expenses of administration of the Development Case and Golf Course Case as required pursuant to, and used solely in accordance with, the Approved Budget; and (iv) fees, costs and expenses of the DIP Lender. |
| **Closing Date:** | As soon as practicable following the entry of a final order of the Bankruptcy Court approving the DIP Loan, containing terms and conditions satisfactory to the DIP Lender in its sole discretion (the "Final Order"). |
| **Priority and Security:** | The DIP Loan is to be secured by fully perfected liens and security interests on all of Borrower's assets now or hereafter acquired, whether held directly or indirectly including interests in other entities and by super priority administrative claims customary in transactions of this type, including, without limitation, fully perfected liens and security interests on all real property owned by the Borrower, all accounts receivable of the Borrower, all rents and revenues from the operation of the Black Bull Golf Course, all revenues from lot sales, all unsold memberships in the Black Bull Golf Course and all proceeds of the foregoing (collectively, the "Collateral"), which liens shall be first priority, priming and senior security interest and liens in and on all the Collateral, provided that that the liens and super priority position securing the DIP Loan shall be subject to a carve out in customary form with respect to the allowed post-petition fees and expenses |

| | |
|---|---|
| | of Borrower's counsel and other professionals retained by the Borrower set forth in the Approved Budget (the "Carve-Out"), which Carve-Out shall in no event exceed $365,000 in the aggregate and the liens shall also be subject to the liens of Gallatin County for taxes and liens on the golf course equipment shall be subject to the liens of Wells Fargo Leasing. |
| **Adequate Protection** | Except as provided in the proposed DIP Budget, unless otherwise agreed by the DIP Lender, the DIP Loan Proceeds shall not be used to pay adequate protection to existing lenders. |
| **Mandatory Prepayments:** | The DIP Loan shall be prepaid with (a) 100% of the net cash proceeds of all asset sales or other dispositions of property by the Borrower (including proceeds from the sale of stock of any subsidiary of Borrower); (b) 100% of the net cash proceeds of certain extraordinary receipts (including tax refunds, indemnity payments, pension reversions, and insurance and condemnation proceeds no included as proceeds of asset dispositions); and (c) other amounts which are usual and customary for debtor-in-possession financings. |
| **Restructuring Benchmarks:** | The Borrower shall be required to satisfy the following benchmarks (the "Benchmarks") by the date listed:<br><br>(a)   On or before the last day of each calendar month, Borrower shall collect monthly dues for such month from at least 80% of the golf club members and 80% of the social members in accordance with the Approved Budget from those members required to pay dues, which aggregate amount collected from golf club members and social members shall be no less than $31,044.00 per month. Membership dues shall be used and applied to pay expenses in accordance with the Approved Budget.<br><br>(b)   On or before August 1, 2010, Borrower shall file proposed Chapter 11 plans of reorganization and disclosure statements thereto in each of the Development Case and the Golf Course Case all in form and substance acceptable to the DIP Lender (the "Plan Documents").<br><br>(c)   On or before November 15, 2010, the Bankruptcy Court shall have confirmed the reorganization plans in each of the Development Case and the Golf Course Case contemplated by the Plan Documents and that are acceptable to the DIP Lender.<br><br>(d)   If the Borrower is unable to propose and secure confirmation of plans of reorganization on or before November 15, 2010, Borrower shall be required to commence a sale, pursuant to Section 363 of the Bankruptcy Code, of substantially all of the Borrower's assets, which sale shall be consummated on or before December 31, 2010. Any sale of any assets of Borrower at any time during the Golf Course Case or Development Case shall be conducted only on terms and with procedures that are agreeable to the DIP Lender, and the commencement by motion or otherwise of any such sale on terms and with procedures that are not approved in advance by the DIP Lender shall be an immediate Event of Default. |

3

| | |
|---|---|
| | Failure to satisfy a Benchmark shall be an Event of Default. |
| **Conditions Precedent to the DIP Loan:** | • Entry of the Interim Order for draws up to $340,000.00 and the Final Order for subsequent draws.<br><br>• The Borrower and DIP Lender shall have agreed upon a budget (the "Approved Budget") in a form satisfactory to the DIP Lender in its sole discretion.<br><br>• All motions and other documents to be filed with and submitted to the Bankruptcy Court in connection with the DIP Loan (including, without limitation, the Interim Order and the Final Order) shall be in form and substance satisfactory to the DIP Lender in its sole discretion.<br><br>• There shall have occurred no material adverse effect on any of the assets, properties, or operations (financial or otherwise) of the Borrower since March 22, 2010.<br><br>• DIP Lender's review and approval of the following items relating to the Borrower and its assets:<br><br>  1. Environmental status of the real property owned by the Borrower;<br>  2. Title and survey review of the real property owned by the Borrower;<br>  3. Governmental entitlements and permits relating to the assets and operations of the Borrower; and<br>  4. Contracts, including membership agreements, between the Borrower and third parties. |
| **Conditions Precedent to Draws from the Escrow Account** | Draws from the collateral account will be conditioned upon the following:<br><br>The Borrower shall have operated (including as to revenues, expenditures and accruals) in accordance with the Approved Budget since the commencement of the Golf Course Case within reasonable, customary and appropriate variances to be included in the final Loan Documentation.<br><br>• There shall exist no Default or Event of Default.<br><br>• The representations and warranties of the Borrower in the DIP Loan Documentation shall be true and correct immediately prior to, and after giving effect to, funding, except to the extent that any such representation or warranty expressly relates only to an earlier date<br><br>• No Material Adverse Change. |
| **Participation** | To the extent the DIP Lender determines in its discretion that participation can be accomplished without undue expense or burden on DIP Lender's administration of the DIP Loan, the DIP Lender will consider making up to $250,000 of the DIP Loan available to participation by current members of the Black Bull Golf Course in minimum participation amounts and terms and conditions to be determined by DIP Lender. |
| **Governing Law** | Commonwealth of Massachusetts |

4

Nothing contained herein shall be considered or intended as legally binding on us or you. Proceeding with a DIP Loan is subject to loan documentation in a form acceptable to us and to you and approval by the Bankruptcy Court.

Sincerely,

CIP BB LENDING LLC

By: _____
Name:
Title: Authorized Signatory

5