Doug James (#2237)
Gregory G. Murphy (#1953)
MOULTON BELLINGHAM PC
Suite 1900, Crowne Plaza
P. O. Box 2559
Billings, Montana 59103-2559
Telephone (406) 248-7731
Direct Dial (406) 238-1565
Fax (406) 248-7889
Doug.James@MoultonBellingham.com
Greg.Murphy@moultonbellingham.com

     Attorneys for OneWest Bank

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

**IN RE:**                                          No. 10-60593 -RBK
                                                    (Chapter 11)
**BLACK BULL RUN DEVELOPMENT LLC**,

                    Debtor.

**IN RE:**

**BLACK BULL GOLF CLUB, INC.**                      No. 10-60537-RBK

                    Debtor

**NOTICE OF HEARING**
**DATE:  April 13, 2010**
**Time:  1:30 p.m.**
**Location: U.S. District Court Russell Smith**
**Courthouse**
    **201 East Broadway**
    **Missoula, MT 59801**

**OBJECTIONS OF ONEWEST BANK**
**TO DEBTORS' MOTION FOR POST-PETITION FINANCING, USE OF CASH**
**COLLATERAL, AND EMERGENCY HEARING**

    OneWest Bank respectfully submits this objection to the motion (the "Motion")

of Black Bull Run Development, LLC "Development" and Black Bull Golf Club, Inc.,

"Golf" collectively the "Debtors") pursuant to sections 105, 361, 362, 363 and 364 of

1

the title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for a final order (i) authorizing the Debtors to obtain post petition financing from CIP BB LENDING, LLC, (ii) authorizing the Debtors to use cash collateral, (iii) granting purported adequate protection in connection therewith, and (iv) granting other related relief [Docket Nos. 12 and 15]:

OneWest objects to the Court holding a hearing on less than 14 days notice as required by Rule 4001(c) of the Federal Rules of Bankruptcy Procedure because the Debtor has made no showing that a Preliminary Hearing is necessary to avoid immediate and irreparable harm.

### Preliminary Statement

The Debtors filed their respective chapter 11 cases on March 22, 2010, some 19 days before the "emergency" motions that are now before the Court. OneWest is a secured creditor in the Development case. Development has no employees. OneWest is not a creditor in the Golf case. The cases have not been substantively or procedurally consolidated.

Debtors seek approval of a DIP loan to fund the operations of both Debtors. In essence, Debtors ask the Court to prime OneWest in order to fund the continued operations of Golf, with which OneWest has no borrowing relationship. Debtors provide the Court with no authority to support their proposition that a secured lender in one chapter 11 case (Development) can be primed in order to fund the operations of another debtor is a separate chapter 11 case (Golf). Debtors' attempt to prime

OneWest for the benefit of Golf violates the Bankruptcy Code and is without legal president.

Development and Golf are separate entities with separate estates. Debtors' motions appear to treat the Debtors as one entity, but that simply is not the case. There is no basis for a DIP loan and a priming loan in the Golf case:

*    Golf owns no real property [Schedule A, Docket No. 1];

*    Golf has assets totaling $953,271.25 and debts of only $147,826.73 [Exhibit   "A" to Petition, Docket No. 1];

*    Golf's assets include unpaid dues from its Members totaling $812,898.00 [Schedule "B", Docket No. 1];

*    OneWest Bank is not a creditor in the Golf case and does not have a lien on the assets of Golf.

## Debtors Are Not Entitled To An Expedited Hearing Pursuant to Bankruptcy Rule 4001(c).

1.    The Debtors are not entitled to an expedited hearing pursuant to Bankruptcy Rule 4001(c) because the Debtors have failed to establish that the Estates would suffer "immediate and irreparable harm" if the Court followed the statutory mandate of holding the hearing on the Motion "no earlier than 14 days after service" of the Motion. Bankruptcy Rule 4001(c) governs the procedures for securing authorization to obtain debtor-in-possession financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c)(2).  Holding the hearing on the Motion just one business day after the Motion was filed and only one day after the hearing order was entered [Order dated April 12, 2010, Docket No. 18] is unnecessary, and prejudices OneWest's ability to defend against the allegations raised in Debtors' Motion. It would be a fundamental denial of due process and a clear violation of the constitution for the Court to grant the Debtors the relief requested upon such short and inadequate notice.

2.     Debtors' motions refer to Black Bull with a broad brush as if the Debtors were one entity and one estate, but that simply is not the case.   There is a fundamental failure of proof in connection with Debtors' motions.  OneWest is only a creditor in the Development case.  Debtors' make no showing of how Development will be immediately and irreparably harmed if an emergency hearing is not held and a priming loan approved.  Development has no employees and Debtors have not provided the Court with a separate budget for Development.   Under these circumstances, there simply is no basis for an emergency hearing.  There is no just cause to deny OneWest the required 14 day notice required by the Rules of Bankruptcy Procedure.

3.     The Debtors also make no showing of how Golf will be immediately and irreparably harmed if an emergency hearing is not held.  Golf has few assets other than receivables from Members who have not paid their dues in excess of $812,000. Besides the receivables, Golf has assets totaling only $140,272.25.  Debtors make no showing of how Golf will be immediately and irreparably harmed if the Court doesn't approve a DIP loan of $2,600,000.00 on an emergency basis.

4

4.       OneWest objects to the Court holding a hearing on less than 14 days notice as required by Rule 4001(c) of the Federal Rules of Bankruptcy Procedure because the Debtor has made no showing that a Preliminary Hearing is necessary to avoid immediate and irreparable harm. The Debtors have not and cannot sustain their burden of proof on this issue. The "emergency" is entirely manufactured.

5.       Debtors filed their respective bankruptcy cases on March 22, 2010, some 19 days before the emergency motions. The simple fact that Debtors waited 19 days until April 9th, demonstrates the lack of an emergency. There were no First Day Motions here. If there truly was a genuine risk of immediate and irreparable harm, then it was incumbent upon the Debtors to bring those matters to the Court at the earliest possible time. After a 19 day delay, an emergency hearing on one day notice simply cannot satisfy the standards of Bankruptcy Rule 4001(c) (2) and due process.

### The CIP DIP Facility Cannot be Approved

6.       The CIP DIP Facility cannot be approved for the basic reason that it does not comply with the Bankruptcy Code. First, under the proposed DIP Facility, the Debtors are attempting to prime OneWest's valid first lien interests in the Development's assets without its consent and without providing any adequate protection of OneWest's interest – something that under section 364(d) of the Bankruptcy Code, the Debtors simply cannot do. Second, the proposed DIP Financing seeks to use OneWest's cash collateral without providing OneWest adequate protection for such use, in violation of section 363(e) of the Bankruptcy Code.

7.     The Debtors cannot demonstrate that the CIP DIP Facility meets the requirements of section 364(d) of the Bankruptcy Code, and, accordingly, the proposed DIP Facility cannot be approved.   This Court has recognized the requirements of 364(d)(1), remarking that:

> [I]n order to obtain Court approval of the Debtors' motion for approval of DIP financing . . . which seeks post petition financing on a super priority, secured, and priming basis under § 364(d), the Debtors must establish: (1) that they are unable to obtain credit otherwise; (2) that the transaction is within the Debtors' business judgment; and (3) that the interests of primed lien holders are adequately protected.

*In re Yellowstone Mt. Club, LLC*, 2008 Bankr. LEXIS 4062, *24-25 (Bankr. D. Mont. Dec. 17, 2008).  The Debtors have failed to meet each of these three factors.  First, Debtors have not demonstrated that there is no alternative financing available to the either Golf or Development.     Second, the Debtors cannot present any valid justification that entry into the CIP DIP Facility is a proper exercise of their business judgment.  Third, the Debtors are not even attempting to provide adequate protection for the priming of their secured creditors' liens.  Fourthly, Debtors have no authority or legal justification for this Court of approve a DIP loan in one bankruptcy case (Development) to fund the operations of another Debtor (Golf).

### **Alternative Financing is Available to the Debtors.**

8.     In order to obtain Court approval of the CIP DIP Financing, the Debtors must establish, among other things, that they are "unable to obtain such credit otherwise."  11 U. S. C. §364(d)(1)(A); *see also In re Yellowstone Mt. Club, LLC*, 2008 Bankr. LEXIS 406 at *24-25 (stating that in order to obtain Court approval of post petition financing on a super priority, secured, and priming basis under §364(d),

debtors must establish, among other things, that they are not able to obtain credit otherwise). The Debtors have not and cannot meet their burden.

9. The Debtors have not demonstrated that they cannot obtain post petition financing other than on a super priority, secured, and priming basis. The Bankruptcy Schedules recently filed by Golf show that the Members of Golf owe dues to the Debtor totaling $812,898. If the Members of the Debtor simply paid their dues, the Debtors would have adequate funds to operate. In essence, the Debtors seek to prime OneWest for the benefit of the very Members who have refused to pay their dues. Debtors are separate legal entities. As such, Golf has not demonstrated that it are unable to obtain funding. Development seeks funding, not to continue its operations, but to fund Golf. Thus, Development has failed to establish that it cannot obtain funding just for its own operations. Accordingly, Debtors' motion to approve the CIP Term Sheet must be denied.

## The CIP DIP Facility Cannot Survive the Business Judgment Test

10. In light of its onerous and usurious terms (15% interest plus a 1% closing fee, plus 5% default interest), the DIP Facility cannot be approved. A bankruptcy court must examine a request for authority to obtain post petition financing to determine whether a debtor can satisfy the business judgment test. *See e.g. In re Ames Dept. Stores, Inc.* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers

or its purpose is not so much to benefit the estate as it is to benefit parties in interest.").

11.   For example, the court in *In re Farmland Indus., Inc.*, 294 B.R. 855 (Bankr. W.D. Mo. 2003) synthesized factors considered by courts in considering whether to approve proposed DIP financing into five oft-cited factors:

(1)   That the proposed financing is an exercise of sound and reasonable business judgment;

(2)   That the financing is in the best interests of the estate and its creditors;

(3)   That the credit transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the Debtors' businesses;

(4)   That the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender; and

(5)   That the financing agreement was negotiated in good faith and at arm's length between the Debtors, on the one hand, and the Agents and the Lenders, on the other hand.

*Farmland*, 294 B.R. at 881; *see also In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005) (using same factors).

12.   Regardless of which factors the Court applies, the Debtors cannot set forth any legitimate justification to support the approval of the CIP DIP Facility.

13.   The CIP DIP Facility simply cannot survive the business judgment test. It burdens the Debtors with higher costs, consisting of a usurious interest rate (20% interest upon default plus fees). The 20% interest rate exceeds the rate allowed by Montana law, see §31-1-107, Montana Code Annotated and as such violates Montana public policy. Under these circumstances, there simply is no way that the CIP proposal can meet the business judgment test.

14.     Furthermore, Development has not demonstrated that the CIP DIP Facility satisfies the business judgment test.  Development cannot establish that it satisfies the business judgment test for the simple reason that the proposed use of the loan funds is to continue the operations of another Debtor, Golf, not Development.  Debtors seek to prime OneWest and burden the Development estate all for the benefit of Golf and its estate.  There simply is no way that this loan can satisfy the business judgment test.

## The Debtors Cannot Prime OneWest

15.     If a debtor is unable to obtain credit under the provisions of section 364(c) of the Bankruptcy Code, the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien.  11 U.S.C. § 364(d).  Section 364(d)(1) of the Bankruptcy Code, which governs the incurrence of post petition debt secured by priming liens, provides that the courts may authorize the obtaining of credit or the incurring of debt secured by a senior lien on property of the estate that is subject to a lien only if (a) "the [debtor is unable to obtain credit otherwise" and (b) "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.  11 U.S.C. § 364(d)(1).  The Debtors fail to meet their burden to prove both of these prongs.

16.     The Debtors cannot prime OneWest's liens on a non-consensual basis because (i) the Development has not demonstrated that it is not able to obtain credit otherwise to fund its operations (to the exclusion of the operations of Golf); (ii) Development has not even attempted to provide OneWest with adequate protection;

and (iii) Golf has no basis to prime OneWest because OneWest is not a creditor in the Golf bankruptcy case and because OneWest has no lien on any of the assets of Golf.

### Development Has Not and Cannot Sustain its Burden to Demonstrate That it is Unable to Obtain Credit Other Than the CIP DIP Financing

17.     In order to obtain Court approval of the  DIP Financing, which is on a super priority, secured, and priming basis, the Development must establish, among other things, that it is "unable to obtain such credit otherwise."   11 U. S. C. §364(d)(1)(A); *see also In re Yellowstone Mt. Club, LLC*, 2008 Bankr. LEXIS 406 at *24-25 (stating that in order to obtain Court approval of post petition financing on a super priority, secured, and priming basis under §364(d), debtors must establish, among other things, that they are not able to obtain credit otherwise).  The Debtors have not and cannot meet their burden.

18.     As discussed, the Debtors have not demonstrated that they cannot obtain post petition financing other than on a super priority, secured, and priming basis.  Under the circumstances, the neither Development nor Golf has established that it is unable to obtain credit elsewhere.  While Development may have been unable to obtain financing for the operations of both Debtors, there is no evidence before the Court that Development could not obtain financing for its own operations. Development has failed to even identify the costs and expenses for which it needs funding.  Absent a detailed budget, there is no way that this Court can make a finding that Development is even in need of a DIP loan.  Accordingly, Debtors' motion to approve the CIP Term Sheet must be denied pursuant to 11 U. S. C. §364(d)(1).

## The Debtors Have Not and Cannot Sustain
## <u>Their Burden of Proof on the Issue of Adequate Protection</u>

19.     Pursuant to the Motion, the Debtors ask, among other things, that the Court allow super-priority administrative claims in each of the Debtors' estates upon all of the Debtors' assets.    Notwithstanding their extraordinary request for the approval of non-consensual priming liens, the Debtors make no effort to (and indeed, cannot) provide adequate protection to the secured creditors they seek to prime.  As set forth in more detail below, section 364(d) of the Bankruptcy Code makes it amply clear:    prior to authorizing the entry of a priming lien on property secured by an existing lien, a debtor has the burden of demonstrating to the Court that there is adequate protection of the interest of the holder of a lien on such property.  *See* 11 U.S.C. 364(d)(2) (the debtor "has the burden of proof on the issue of adequate protection"); *see also In re Yellowstone Mt. Club, LLC*, 2008 Bankr. LEXIS 406 at *24-25 (stating that in order to obtain Court approval of post petition financing on a super priority, secured, and priming basis under §364(d), debtors must establish, among other things, "that interests of primed lien holders are adequately protected").  As demonstrated below, the Debtors have again failed to meet their burden under section 364 of the Bankruptcy Code.

20.     Debtors propose giving OneWest a replacement lien upon unsold Golf memberships.  The golf memberships, however, relate to the Golf bankruptcy case, where OneWest is not a creditor.   Thus, Debtors seek to prime OneWest in the Development case and then provide a replacement lien by granting OneWest a lien on assets in another bankruptcy case, Golf.  This clearly violates the spirit and letter of the Bankruptcy Code.     Furthermore, it is apparent that the unsold golf

memberships in Golf have no value.  More than 85% of Golf's assets consist of unpaid dues from existing Members.  What the Debtors truly seek is to prime OneWest in the Development case for the benefit of the Members who have not paid their Golf dues in the Golf case.  The proposed replacement lien is entirely speculative and offers OneWest a lien on something that may never come into existence and which currently has no value. Debtors' proposal simply does not constitute adequate protection.

**The CIP DIP Facility Cannot
In and of Itself Serve as Adequate Protection**

21.     Obtaining post petition credit by a debtor-in-possession is governed by section 364 of the Bankruptcy Code.   Under the plain language of section 364(d)(1)(B), a court may grant a "priming lien" only if a debtor is unable to obtain credit otherwise and if "adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. §364(d)(1)(B).

22.     Here, the analysis is straightforward.   Because the Debtors seek to grant a senior lien to CIP, the Debtors must prove that OneWest is adequately protected.  This requirement is due to the fact that:

> The ability to prime an existing lien is extraordinary, and in addition to the requirement that the trustee be unable to otherwise obtain the credit, the trustee must provide adequate protection for the interest of the holder of the existing lien...In most cases, adequate protection is provided by condition or limited the borrowing in order to maintain a sufficient equity in the subject property to protect the existing lien holder.

Collier on Bankruptcy, Vol. 3, § 364.05 (15th ed. Rev. 2002)

23. Faced with circumstances similar to those at hand, courts have stressed the need for adequate protection. For example, *In re Mosello*, the court stated that because a priming lien "displaces liens on which creditors have relied in extending credit, a court that is asked to authorize such financing must be particularly cautious when assessing whether the creditors so displaced are adequately protected." 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) (citing *In re First South Saving Assn.*, 820 F.2d 700, 710 (5th Cir. 1987)); *see also RTC v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (bankruptcy court must find adequate protection before approving post-petition financing on a super-priority basis); *In re Eagle Creek Subdivision, LLC*, 2008 WL 2761302, **2-3, 2008 Bankr. LEXIS 2412 at *8 (Bankr. E.D.N.C. 2008) ("The court cannot authorize a priming lien unless the debtors have shown that each lien holder whose rights would be impaired by the proposed priming lien are (sic) adequately protected."); *In re Colad Group, Inc.*, 324 B.R. 208, 223 (Bankr. W.D.N.Y. 2005) ("in order to grant a priming lien, the court must make a finding of adequate protection of all senior or equal interests").

24. Further, the Bankruptcy Code makes clear that the burden of providing adequate protection when relief under section 364(d) is requested lies on the Debtor, not the party seeking adequate protection. Specifically, section 364(d)(2) provides, "[i]n any hearing under this subsection, the [debtor] has the burden of proof on the issue of adequate protection." 11 U.S.C § 364(d)(2).

25. The Debtors do not even attempt to meet this burden. Instead, they ignore the clear language of the Bankruptcy Code and argue that there is no need for

adequate protection, in this instance because granting the Motion is adequate protection in and of itself due to the resultant increase in value of OneWest's interests in the collateral   The Debtors argue that the proposed DIP financing preserves the value of its businesses and increases the value of the OneWest's collateral, thereby providing adequate protection to OneWest.

26.     What the Debtors propose clearly rewrites the Bankruptcy Code by entirely eliminating the very concept of adequate protection from its pages.  If the Debtors were correct, _every_ prepetition lender is adequately protected by virtue of being primed.  What the Debtors suggest turns the Bankruptcy Code on its head and is nonsensical.  Indeed, this argument has been plainly rejected by courts considering similar issues.

27.     Facing facts similar to those at hand, the court in _In re Mosello_ concluded that the debtors did not sustain their burden of proof on the issue of "adequate protection" under section 364(d)(1)(B). 195 B.R. 277 (Bankr. S.D.N.Y. 1996).  The court held that the debtors could not provide adequate protection to an under secured creditor where there was only a speculative benefit through the possible development of the real property securing the creditor's claim.  _Id_. at 289-293.

28.     The _Mosello_ court went on to cite numerous cases for the proposition that a court must base adequate protection findings "on facts, or on projections grounded on a firm evidentiary basis" Id. (citing _In re First South Savings Assoc._, 820 F.2d 700, 712 (5th Cir. 1987) (debtors' proposed post-petition financing should be rejected where "[t]he numbers (i.e. value, income) offered by those called by the

14

debtor to testify were ... based on assumptions that are not supported in the record.")); *In the Matter of St. Petersburg Hotel Assocs. Ltd.*, 44 B.R. 944, 946 (Bankr. M.D. Fla. 1984) (denying super priority financing where "[a]n examination of the assumptions relied on by the Debtor which forms the basis for the proposition that the Mortgagee is adequately protected reveals that the assumptions are mere expectations, many of which are highly speculative and unrealistic."); *In re Timber Products Inc.*, 125 B.R. 433, 440 (Bankr. W.D. Pa. 1990) (denying debtors' request for a priming lien where "Debtors ignore all potential negative contingencies and are overly optimistic regarding the basic expenses to be incurred"); *In re Swedeland Dev. Group, Inc.*, 16 F.3d at 566); *see also In re Chevy Devco*, 78 B.R. 585, 587 (Bankr. C.D.Ca. 1987) (holding that there was no adequate protection for a secured creditor because the possible benefits of a proposed DIP loan that would require the subordination of existing secured creditors were speculative and would not substantially improve the position of the secured creditor who, essentially, was being asked to act as an investor and risk its money on the "hope that there is a profit to be made").

29.    Similarly, in *Swedeland*, the Third Circuit rejected the debtors' argument that a secured creditor was adequately protected on the basis that a "development property is increased in value simply because a debtor may continue with construction which might or might not prove to be profitable." 16 F.3d at 566. The Third Circuit held that mere speculative gains do not justify the allowance of super priority liens. *See id.* Here too, where the gains could not be more speculative, prepetition secured creditors are not being provided "with the same level of protection

[they] would have had if there had not been post petition super priority financing." *Id*. Every dollar of secured debt that the Debtors incur on a priming basis necessarily threatens and reduces the value of OneWest's collateral. The Debtors do not and cannot offer a shred of fact-based evidence to the contrary.

30. In *Yellowstone*, the Court held that the interests of the debtors' prepetition lenders were adequately protected because of the economic benefit to all parties stemming from the DIP Loan, basing its finding upon the testimony of the debtors' chief restructuring officer that the proposed DIP loan will serve to preserve the value of their collateral and enhance it. *See Yellowstone* at *52. However, in *Yellowstone*, the Court emphasized that it relied on projections grounded on a firm evidentiary basis, none of which are provided by the Debtors in this case. Moreover, upon the time and date of the final hearing on approval of the debtors' DIP financing, there was no alternative financing available to the debtors other than that approved by the Court and, absent approval, the resort would have to shut down. In light of this, and upon testimony of the debtors' chief restructuring officer, the Court concluded that the collateral securing the Debtors' prepetition financing was likely to decline in value precipitously absent entry approval of the Proposed DIP Financing, and as a consequence, the Debtors' prepetition lenders would be provided with "at least the same level of protection they would have absent the DIP Agent's super priority financing that primes" their position. *Id.* at *53. In stark contrast here, however, Debtors' golf facilities are already shut down and Members have stopped paying dues. The ostensible purpose of the proposed DIP loan is to reopen the golf course for the very Members who have failed and refused to pay their dues. The DIP

loan is not intended to preserve an on-going operation or assets. This is nothing more than a blatant effort to leverage a secured lender for the benefit of Members who owe more than $812,000 in past dues.

31.   Courts routinely recognize that a bankruptcy court may not grant a lien which primes a pre-existing under secured creditor without providing adequate protection. *See, e.g. St. Petersburg Hotel Assoc., Ltd.*, 44 B.R. at 944 (denying debtors request to approve financing secured by priming lien absent compensatory measures to assure the preexisting secured creditor's position because "...to permit the Debtors to saddle this property with an additional encumbrance which is superior to the interest of the Mortgagee would clearly operate to further deteriorate the position of the Mortgagee..."); *In re Windsor Hotel, LLC*, 295 B.R. 307 (Bankr. C.D. Ill. 2003) (where debtor could not show that property securing creditors' claims had value in excess of the claims and debtor had no other unencumbered assets with which to provide creditors a replacement lien, debtor's request for leave to borrow on super priority basis denied). *See also Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1019-1020 (11th Cir. 1984); *In re Mosello*, 195 B.R. at 288 ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of *its interest* during the Chapter 11 reorganization") (*quoting In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (emphasis added)); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985) ("The concept of adequate protection was designed to '*insure* that the secured creditor receives the *value* for which he bargained'") (quoting S.Rep. No. 989, 95th

17

Cong., 2d Sess. 53, *reprinted* in 1978 U.S. Code Cong. & Ad.News 5787, 5839 (emphasis in original)).

32.    In summary, the amorphous concept of preserving collateral or preventing its deterioration is insufficient to provide adequate protection to creditors for a priming lien.   The concept of "adequate protection" as embodied in the Bankruptcy Code requires that the secured creditor's interest be safeguarded from diminution in value.   Development owes OneWest in excess of $38 Million. [See Development Schedule D, Docket No. 10] or in excess of $31 Million [Motion, §11, Docket No. 15].   Development values OneWest's collateral at $16 Million [Motion, §17].   Thus, the Debtors' own motion shows that OneWest is under collateralized by approximately $21 Million.   It must be noted, however, that the Debtors have no current or reliable evidence of value.   Debtors' motion makes reference to a 2008 appraisal that is clearly outdated in light of the national recession and declining real property values.   This Court has witnessed property values in Gallatin County decline significantly over the last two years.   The Yellowstone Mountain Club and Moonlight Basin Ranch LP are clear examples of how real estate values declined in 2009. Adding of millions of dollars in further priming debt to  Development's balance sheet without obtaining OneWest's consent or providing OneWest with a replacement lien or means of adequate protection, erodes, rather than safeguards, the secured creditors' collateral value.   Accordingly, the CIP DIP Facility cannot be approved.

### The Court Must Deny the Debtors' Request to Use OneWest's Cash Collateral

33.    The Court must deny the Debtors' request for an order authorizing the use of cash collateral because, as with the proposed priming liens for the benefit of

18

CIP, the Debtors' cannot provide adequate protection.   Section 363(c)(2) provides in relevant part that "[t]he trustee may not use, sell or lease cash collateral . . . unless the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.   11 U.S.C. §363(c)(2).   Upon the "request of an entity that has an interest in property...proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. §363(e).   Under section 361 of the Bankruptcy Code:

> when adequate protection is required under section 363, such adequate protection may be provided by—
>
> > (1)     requiring the trustee to make a cash payment or periodic cash payments to such entity to the extent that the... use, sale or lease under section 363 of this title.... results in a decrease in the value of such entity's interest in such property;
> >
> > (2)     providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
> >
> > (3)     granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. §361.   The Development has not met and cannot meet any of the three mandatory requirements set forth in section 361 of the bankruptcy code.

34.     OneWest's interest in the cash collateral is not being adequately protected, and the Debtors' financial predicament makes them unable to provide any form of adequate protection.   There is no equity cushion in the Debtors' assets that would otherwise provide OneWest with adequate protection.   The estimated values of the Debtors' assets do not even begin to approach the principal amount of the Prepetition Loan.   OneWest's collateral includes post petition cash collateral.   There

simply is no conceivable way in which the Debtors can adequately protect OneWest's interest in the cash collateral the Debtors seek to use.

35.     Development also cannot provide any relief that will result in the realization by OneWest of the "indubitable equivalent" of OneWest's interest in the Debtors' property.  While collateral need not be replaced with an identical type of collateral, giving a creditor an alternative security of a dubious value or a value barely that of the debt does not meet the "indubitable equivalent" standard.  *See M Bank Dallas N.A. v. O'Connor (In re O'Connor)*, 808 F. 2d 1393 (10th Cir 1987) (court permitted the use of cash collateral to drill new oil wells in "proven areas"); *In re Martin* 761 F. 2d 472 (8th Cir. 1985); *In re Lundell Farms,* 86 B.R. 582 (Bankr. W.D. Wis. 1988) (replacement lien offered too speculative in value).  Because the Debtors have no additional property to encumber, the Debtors cannot (and have not offered to) provide any replacement lien that could be of anything other than dubious value.  Without receiving adequate protection, OneWest serves as an unprotected and unwilling post petition financier of the Debtors' chapter 11 cases.  If the Debtors wish to obtain financing from OneWest, otherwise OneWest cannot be primed, and its cash collateral cannot be used.

36.     Given that OneWest is severely under secured, any attempts at reorganization will fail to allow OneWest to recover its claim as a secured creditor, let alone provide sufficient excess value to provide a benefit to the unsecured creditors of the estate.  Instead, the use of cash collateral is merely an attempt to shift the costs of the estate to OneWest, for the exclusive benefit of the Debtors' equity holders and CIP, and at grave expense to the Debtors' estates, their creditors, and

OneWest. As discussed above, a secured creditor, such as OneWest, who does not receive adequate protection cannot and should not be forced to shoulder the risks and costs of the Debtors' bankruptcy, as well as experience the precipitous decline in the value of its collateral for the benefit of CIP, without adequate protection.

WHEREFORE the OneWest Bank respectfully requests the Court to deny Debtors' request for an expedited hearing and for an Order approving post-petition financing and use of cash collateral.

DATED this 12th day of April, 2010.

MOULTON BELLINGHAM PC

By /s/ Doug James

Doug James (#2237)
Gregory G. Murphy (#1953)
MOULTON BELLINGHAM PC
Suite 1900, Crowne Plaza
P. O. Box 2559
Billings, Montana 59103-2559
Telephone (406) 248-7731
Direct Dial (406) 238-1565
Fax (406) 248-7889
Doug.James@MoultonBellingham.com
Greg.Murphy@moultonbellingham.com

Attorneys for OneWest Bank