UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**BLACK BULL RUN DEVELOPMENT, LLC**,<br><br>Debtor.<br><br>In re<br><br>**BLACK BULL GOLF CLUB, INC**,<br><br>Debtor. | Case No. **10-60593-11**<br><br><br><br><br><br>Case No. **10-60537-11** |

# O R D E R

At Butte in said District this 27th day of April, 2010.

In the above-referenced Chapter 11 bankruptcy proceedings, after notice as required by Rule 4001, F.R.B.P., a hearing was held April 26, 2010, in Billings on the Debtors' Motions Pursuant to Bankruptcy Code Sections 105, 361, 362, 363 and 364 and Bankruptcy Rules 2002, 4001, and 9014 for Interim and Final Orders (1) Authorizing Debtors to Obtain Post-Petition Financing (2) Authorizing Debtors to Utilize Cash Collateral, (3) Granting Adequate Protection to Pre-Petition Secured Lenders and (4) Scheduling Interim and Final Hearings. Debtor Black Bull Run Development, LLC (Case No. 10-60593-11) was represented at the hearing by James A. Patten of Billings, Montana; Debtor Black Bull Golf Club, Inc. (Case No. 10-60537-11) was represented at the hearing by Ross P. Richardson of Butte, Montana; Gregory G. Murphy and Doug James of Billings, Montana appeared on behalf of OneWest Bank; Paul D. Moore of

1

Boston, Massachusetts and Benjamin P. Hursh of Missoula, Montana appeared on behalf of CIP BB Lending, LLC; Keith Jones of Helena, Montana appeared on behalf of the Montana Department of Revenue; Bruce Spencer of Helena, Montana appeared on behalf of Wells Fargo Leasing; and Neal Jensen of Great Falls, Montana appeared on behalf of the Office of the United States Trustee. The Court heard testimony from Steve Barrett, Craig Bryant, Daniel Moore and Matthew Kidd and OneWest Bank's Exhibit 1 and the Debtors' Exhibits 1, 2 and 3 were admitted into evidence.

In the pending Motions, the Debtors request approval of a DIP [Debtor-in-Possession] Facility, authorizing a superpriority postpetition term loan financing facility with CIP BB Lending, LLC pursuant to the DIP Facility in an aggregate principal amount of $2,600,000.00 on the terms set forth on the Term Sheet attached to the Motion as Exhibit 1 secured by substantially all of the assets of the Debtors now owned or hereafter acquired including, but not limited to, inventory, accounts receivable, unsold golf club memberships, other rights to payment whether arising before or after the Petition Date, property, plants, equipment, general intangibles, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, other intellectual property and the proceeds of all the foregoing (but excluding claims and causes of action under §§ 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code. OneWest Bank, and construction lien creditors Sime Construction, Inc., JTL Group, Inc., d/b/a Knife River-Belgrade, Allied Engineering Services, Inc., and Cashman Nursery oppose the Debtors' request for approval of the Debtors' proposed DIP financing with CIP BB Lending. The objections to approval of the proposed DIP financing are that Black Bull Run Development, LLC is seeking to obtain financing for Black Bull Golf Club, Inc. to the detriment of Black Bull

Run Development, LLC's creditors, that the Debtors have not proven that alternative financing is unavailable, that the proposed DIP financing does not meet the business judgment test and that the proposed DIP financing does not provide adequate protection to the prepetition creditors. Secured creditor Leachman Angus Ranch does not oppose Debtors' request for approval of the DIP facility, but requests that "as additional adequate protection for Leachman, it is requested that the Court order that the Debtor, Trustee, and the interim financing entity agree to recognize and honor the Agreements (House Agreements) between Black Bull Run Development, LLC and Leachman Angus Ranch in regard to the Leachman House located on the undeveloped Phase II of Black Bull Run Subdivision."

## JURISDICTION

Pursuant to 28 U.S.C. §§ 157(b) and 1334, this Court has jurisdiction of the matters raised in the Debtors' DIP Financing Motions. Consideration of the DIP Financing Motions constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

The Court notes at the outset that the above-captioned Debtors have different creditors and ownership structure. In addition, the Debtors' bankruptcy cases are not being jointly administered and the cases have not been consolidated.

The Debtor Black Bull Run Development, LLC is the owner of real property located in Gallatin County, Montana. According to OneWest Bank's Exhibit 1, which Debtor's offered into evidence over the objection of OneWest Bank, the subject real property consists of a portion of Black Bull, a private mountain golf course community. The 483.65 acre development, once

completed, will consist of 378 lots (and 350 golf memberships) surrounded by a private 18-hole golf course designed by Tom Weiskopf. The Debtors also contemplate that the Black Bull golf course community will have a large clubhouse, a practice facility, a swim and tennis center with pool, spa and tennis courts, along with a number of parks and natural open areas with a series of lakes and streams.

Black Bull Run Development, LLC secured final plat approval on July 25, 2007, for 300 lots (Phase I), while the remaining 78 (Phase II) are subject to preliminary plat approval. Black Bull Run Development, LLC has sold 64 of the Phase I lots. The Debtors have also sold 118 golf memberships. Other than two model homes built by Black Bull Run Development, LLC, only six other homes have been built in the Black Bull golf course community to date. The Black Bull golf course has been completed. In addition, the swim and tennis center building has been completed but is being temporarily used as a clubhouse and sales center.

FirstService PGP Valuation of Roseville, California, on behalf of La Jolla Bank, a.k.a. OneWest Bank, in a summary appraisal dated March 12, 2010, asserts that the "as is" value of the Black Bull golf course development, less the 64 lots and 118 golf memberships sold, is $17,620,000. As of Black Bull Run Development, LLC's petition date, it was indebted to the Senior Secured Lender (OneWest Bank) under a Senior Secured Loan in the amount of $31,264,434. In addition, Black Bull Run Development, LLC owes Gallatin County $275,360 for 2008 and the first half of 2009 property taxes. Black Bull Run Development, LLC also owes Leachman Angus Ranch $2,400,000 on a purchase money mortgage loan. Eleven construction liens totaling $1,033,515 have also been filed against Black Bull Run Development, LLC's real property.

Black Bull Golf Club, Inc. does not own any real property and is not indebted to OneWest Bank.  However, Black Bull Golf Club, Inc. operates the Black Bull golf course.  Black Bull Golf Club, Inc. is indebted to Wells Fargo Leasing in the sum of $1,208,096 and also has trade debt of roughly $145,686.00.

The Debtors project that they will receive revenues totaling $357,789.60 during the remainder of 2010.  That revenue is attributable to golf membership dues, social membership dues and the golf shop.  The Debtors also project expenses of roughly $2,957,789.60, which expenses are as follows: model home maintenance of $112,400, golf course maintenance of $1,234,357.24, bar operations of $29,511.34, food service of $66,177.03, house maintenance of $54,650.97, tennis expense of $23,300, general and administrative expense of $562,095.74, bankruptcy costs of $365,000, lender's expenses of $150,000, interest costs of $292,500, and a commitment fee of $26,000, leaving $41,797.77 of the $2.6 million DIP financing for contingencies.

## DISCUSSION

The Debtors are authorized to operate their business under 11 U.S.C. § 1108 and, as such, are able to request Court approval of postpetition credit under § 364, which reads in relevant part:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt-
>
> > (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> >
> > (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

>> (3) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if--
>
>> (A) the trustee is unable to obtain such credit otherwise; and
>>
>> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

As set forth above, in order to obtain Court approval of the Debtors' motions for approval of DIP financing with CIP BB Lending, which seeks postpetition financing on a superpriority, secured, and priming basis under § 364(d), the Debtors must establish: (1) that they are unable to obtain credit otherwise; (2) that the transaction is within the Debtors' business judgment; and (3) that the interests of primed lienholders are adequately protected.

The Court need not ascertain whether the Debtors are able to obtain credit otherwise or whether the transaction is within the Debtors' business judgment because Debtors failed to establish that the interests of the primed lienholders, namely, the interests of OneWest Bank, Sime Construction, Inc., JTL Group, Inc., d/b/a Knife River-Belgrade, Allied Engineering Services, Inc., and Cashman Nursery, are adequately protected. The Debtors want to borrow $2.6 million from CIP BB Lending at 15% interest, secured by all the Debtors' assets, so that Black Bull Golf Club, Inc. can continue to operate the golf course and provide amenities to its 118 members. The Debtors, without any credible evidence, seek to convince this Court that the Debtors' proposed DIP financing of $2.6 million will preserve the value of OneWest Bank's

collateral by the same amount.

For instance, Daniel Moore, the Golf Course Superintendent at the Black Bull golf course, testified that although he has never had to bring a golf course back to life, if the Black Bull golf course was allowed to die due to a lack of financing, it would take $4,749,226 to bring the golf course back to life. Interestingly, Matthew Kidd who is a principal of CrossHarbor Capital Partners, the apparent parent company of CIP BB Lending, testified that his company is in the process of bringing a golf course back to life and it has cost about $1 million.

Matthew Kidd also testified that a golf course can be a significant amenity to a residential development. Given the potential value of the golf course to the Debtors, including the projected revenue stream of roughly $40,000 per month, Kidd believed that keeping the 118 members happy and paying dues had more value than the cost of CIP BB Lending's proposed DIP financing.

The Court agrees that in an ideal world it would be nice to give the 118 members at Black Bull the benefit of their bargain by approving the $2.6 million DIP loan and thereby permitting the Black Bull golf course to open for the upcoming golf season. However, such desire has to be balanced against the interests of the primed lienholders. As stated earlier, under the Bankruptcy Code, in order to prime the existing lienholders, the Debtors must show that such lienholders will be adequately protected. It is clear from the record that the prepetition secured debt in this case far exceeds the value of Black Bull Run Development, LLC's assets. Therefore, the Debtors do not have any type of equity cushion in their assets that they can use as a form of adequate protection. The Debtors also have no cash with which to make adequate protection payments and the Debtors have failed their burden of showing that the proposed DIP financing from CIP

BB Lending will benefit the prepetition secured lenders by the amount of the DIP financing. Having failed their burden, the Court cannot approve the Debtors' request for DIP financing. Thus, for the reasons stated above and at the hearing held April 26, 2010, and in accordance with the Court's oral ruling,

IT IS ORDERED that the Debtors' Motions Pursuant to Bankruptcy Code Sections 105, 361, 362, 363 and 364 and Bankruptcy Rules 2002, 4001, and 9014 for Interim and Final Orders (1) Authorizing Debtors to Obtain Post-Petition Financing (2) Authorizing Debtors to Utilize Cash Collateral, (3) Granting Adequate Protection to Pre-Petition Secured Lenders and (4) Scheduling Interim and Final Hearings are DENIED.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana