Gregory G. Murphy (#1953)
Doug James (#2237)
MOULTON BELLINGHAM PC
Suite 1900, Crowne Plaza
P. O. Box 2559
Billings, Montana 59103-2559
Telephone (406) 248-7731
Direct Dial (406) 238-1565
Fax (406) 248-7889
Greg.Murphy@moultonbellingham.com
Doug.James@MoultonBellingham.com

Attorneys for OneWest Bank

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| IN RE<br><br>BLACK BULL RUN DEVELOPMENT LLC,<br><br>Debtor. | No.10-60593 -RBK<br>(Chapter 11)<br><br>**OBJECTION OF ONEWEST BANK TO BLACK BULL RUN LLC'S JUNE 3, 2010 MOTION FOR LEAVE TO INCUR DEBT**<br><br>**NOTICE OF HEARING**<br>**Date: JULY 6, 2010**<br>**Time: 9:00 A.M.**<br>**Location: U.S. COURTHOUSE, BUTTE, MONTANA** |

**Introduction**

In accordance with the Court's order of June 3, 2010 giving allowing parties in interest until June 10, 2010 (within seven days of the order) within which to object to the Debtor's June 3, 2010 motion for leave to incur debt, OneWest Bank, the current holder of notes originally given by Black Bull Run Development, LLC to La Jolla Bank, and the holder of associated security (including a mortgage and a security agreement covering virtually all assets of the estate), objects to the Debtor's June 3, 2010 motion to obtain post-petition financing on the following grounds:

1. 11 U.S.C. § 364 provides that the Court may authorize the granting of a senior or equal lien to that held by secured creditors **only if** "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal is proposed to be granted." Contrary to the Debtor's assertion, OneWest Bank will not be "adequately protected" under the Debtor's proposal. Indeed, OneWest Bank is not adequately protected now, and is entitled to adequate protection payments under 11 U.S.C. § 361. The bank is owed over $30,000,000, and the value of the collateral securing the debt is worth less than $20,000,000. The Debtor is not making cash payments contemplated by 11 U.S.C. § 101(51)(b) and 11 U.S.C. § 362(d)(3), and has no prospects of filing a plan of reorganization with a reasonable possibility of being confirmed by June 22, 2010. Instead of priming OneWest Bank, the debtor should be making cash payments to OneWest Bank.

2. The proposed financing and proposed granting of the priming lien are for the benefit of Black Bull Run Golf Club, Inc., its members, and its creditors, not the creditors in this proceeding. The authorizing of the proposed credit will not benefit this estate or its creditors. The granting of a priming lien to benefit another estate is without precedent and is not justifiable.

3. The Debtor does not propose reorganization, but rather liquidation of the estate. The liquidation would be more effectively and efficiently accomplished without the proposed financing under 11 U.S.C. § 364 and without the attendant costs and expenses to the estate. Conversion will avoid the diminution in the value of the secured position of OneWest Bank and the

other secured creditors who would be "primed" by the proposed financing. The Court should order this proceeding converted to a liquidating proceeding under 11 U.S.C § 701, et seq., within which the assets of the estate may be appropriately protected and sold by a trustee, subject to the approval of the Court, for distribution to the creditors of the estate.

**False Representations by the Debtor**

The Debtor's pending motion falsely represents to the Court that OneWest did not object on adequate protection grounds to the April 9, 2010 motion authorization to obtain credit. (See, Debtor's motion, p6 ¶20(a) Doc. #68 ("No specific objection was raised on the adequate protection.")) OneWest did indeed strenuously object in writing, and specifically argued that it would not be adequately protected. If one were to read OneWest's objection, it would be impossible to miss its argument that it would not be adequately protected. (See, Doc. # 20, ¶ 6, ¶ 7, ¶ 15, ¶ 16, ¶19, ¶20, ¶22, ¶23, ¶24, ¶25, ¶26, ¶28, ¶29, ¶31, ¶32.) The same rationale and authority offered in OneWest's previous objection that it would not be adequately protected applies here, but OneWest will not burden the Court by repeating the authorities and argument here. Rather, OneWest commends the Court to its previously filed objection.

The Court may also recall that at the end of the last hearing OneWest elected not to waste the Court's time further by calling a witness who was present. Instead, OneWest offered a brief argument that the Debtor had failed to carry its burden of demonstrating adequate protection. The Court held that the Debtor did not carry its burden. The Debtor cannot carry its burden on this occasion either.

The Debtor also says that OneWest does not have a security interest in the authorized but unsold golf memberships. But, OneWest has a perfected security interest in moneys traceable to sales of golf club memberships. OneWest has a perfected security

3

interest in the rights of Black Bull Run Development, LLC, in The "Club Transfer Agreement between Black Bull Run Development, LLC and The Black Bull Run Golf Club. The "Commercial Security Agreement" given by Black Bull Run Development, LLC includes a security interest in Black Bull Run Development, LLC's contract rights and its general intangibles. The "Club Transfer Agreement" gives Black Bull Run Development, LLC contract rights and constitutes a general intangible. The agreement contains the following three paragraphs:

> (a) All membership contributions received from the sale of Equity memberships will be deposited in an escrow account at a financial institution until the conditions set forth therein for release of the membership contributions have been satisfied as provided in the Escrow Agreement for Membership Contributions.
>
> (b) The costs of constructing and equipping the Club Facilities will be paid by one or more loans and/or from the proceeds from the issuance of the Club Equity memberships once the conditions for release of the escrow have been satisfied. Once the conditions for the release of escrow have been satisfied, the proceeds from the issuance of the Club Equity memberships shall be used first, to reimburse the Company for the costs it incurred in connection with the construction of the Club Facilities, including , without limitation, any design, permitting, architectural or other similar costs, and then to pay the cost of constructing and equipping the Club Facilities, including the repayment of any loan(s) obtained by the Club to finance construction and equipping costs.
>
> (c) In the event the proceeds from the issuance of the Club Equity Memberships are insufficient to pay the cost of constructing and equipping the Club Facilities or to repay any loan obtained to finance construction or equipping costs, the Company agrees to fund such shortfall. In exchange for the Company's obligation to fund such shortfall, the Company shall be entitled to receive the proceeds from the Club Equity Memberships to the extent that the proceeds shall exceed the cost of constructing and equipping the Club Facilities.

MOULTON BELLINGHAM PC

Neither Black Bull Run Development, LLC nor The Black Bull Run Golf Club, Inc. has rejected the contract. Therefore, OneWest already has a perfected security interest in the proceeds from the sale of golf club memberships. The Debtor's statement that the bank does not have a security interest is false. In short, no replacement lien is being offered.

**Unsold Golf Memberships as Collateral and Lack of Adequate Protection**

The Debtor contends that with the offering of unsold golf memberships in Black Bull Run Golf Club as security, OneWest will be adequately protected. Assume for purposes of argument that OneWest does not have a perfected security interest in proceeds from the sale of golf memberships. It is still the case that providing a security interest in prospective and unidentified sales of golf memberships in a defunct golf club, sales which are to occur after the golf club is liquidated, is not adequate protection in the form of a replacement lien in exchange for priming the bank's existing mortgage. The Debtor's argument here may be admired for its brazenness, but not its merit. The Debtor's proposal would not adequately protect OneWest Bank.

Whatever may be said of the credibility of the appraisal provided to La Jolla Bank as to the value of the golf memberships (The appraiser was not present at the hearing to explain any valuation of golf course memberships or his appraisal),[1] the Court may recall the testimony by Mr. Barrett on behalf of the Debtor that few, if any, memberships were sold in the year previous to the filing of The Black Bull Run Golf Club's petition, and that none have been sold since. The Court will also recall Mr. Barrett's testimony that the prospects of sales of memberships during the pendency of the Chapter 11 proceeding are nil.

---

[1] For example, the appraisal clearly contemplates sale outside a bankruptcy liquidation context. Moreover, it does not appear that in preparing the appraisal the appraiser took into account the legally separate nature of Black Bull Run Development, LLC and Black Bull Run Golf Club, Inc. and the consequent implications, or obligations under the "Club Transfer Agreement."

5

To suggest that future and unidentified sales of unsold golf memberships in a golf club in liquidation is equivalent to a perfected senior security interest in land would be laughable if it did not appear that the Debtor is apparently serious. In truth, the Debtor proposes a priming lien on real property with priority before OneWest's and other secured creditors' liens in exchange for an ephemeral asset--unsold golf memberships. This is not the "adequate protection," contemplated by either § 364 or § 361.

Moreover, the eventual purchaser of the land in the Debtor's estate will not be interested in an effectively defunct golf club, particularly a golf club burdened by turning over the proceeds of its future memberships sales to secured creditors. If the proposal by Black Bull Run Development, LLC and The Black Bull Run Golf, Inc. is that the liquidation of the land of the Debtor's estate must be accomplished in connection with the liquidation of Black Bull Run Golf Club, and must burdened by the rules and the relationship between the two entities, the authorizing of the credit and the priming lien will only diminish the value and marketability of the land in the this debtor's estate, rather than protect or enhance its value.

The Debtor's proposal will do nothing more than transfer value from the Debtor's estate to Black Bull Run Golf and to its membership, to be consumed by them. This would be to the detriment of the creditors of Black Bull Run Development, LLC. It would also be without precedent under the law and cannot be properly justified. The Debtor has cited no authority that a creditor's liens in one bankruptcy may be primed in favor of another bankruptcy estate and its creditors. There is none.

The Debtor contends that the value of the real estate lots are enhanced by the golf club. There may be some value in the lots being located next to a golf course, but the value of the lots are not enhanced by The Black Bull Run Golf Club. If the terms of the proposed liquidation would be to sell the assets of Black Bull Run Development free and clear of all

liens, then they should be sold be sold without the burden of the golf club obligations. Indeed, Black Bull Run Development, LLC would enhance its value by rejecting the executory contracts with The Black Bull Run Golf Club. Surely, the value for sale of the Black Bull Run Development assets would be enhanced without burden of the golf club, as opposed to the golf course. Moreover, a golf club whose future membership sales must go to a creditor rather than a buyer is of little or no value. The purchaser, may, if it desires, start its own club with its own rules, or decide not to operate a club.

If it is true that The Black Bull Run Golf, Inc. is to be liquidated, as has been represented, and if it true that its assets are to be sold free and clear of liens, then the security will evaporate upon the sale free and clear of all liens. This is not adequate protection within the meaning of § 361.

Adequate protection is defined in § 361. It requires the making of "cash payments," the granting of an additional or replacement lien, or the granting of other relief which is the "indubitable equivalent" of the secured creditor's interest in the property. Adequate protection means just that—adequate protection. It is a fantasy to suggest that security in unidentified future sales of memberships in Black Bull Run Golf Club, which is in bankruptcy liquidation, is of equal to or of more value than $1,000,000 worth of real estate the Debtor seeks to offer as security to the proposed lender. Unsold golf memberships, particularly in a golf club in liquidation, are certainly not the anywhere close to the "indubitable equivalent" of a mortgage on real estate.

The requirement of adequate protection has its roots in the Amendment 5 to the United States Constitution which provides that no person shall be deprived of property without due process of law. § 364 provides that the Debtor bears the burden of demonstrating adequate protection. OneWest respectfully submits that it has not, and cannot, carry its burden.

**Single Asset Real Estate and Conversion to Chapter 7**

The Court should bear in mind that Black Bull Run Development, LLC is a "single asset real estate" entity within the meaning of 11 U.S.C. § 101(51B). Black Bull Run, LLC is a real estate development. It is a "single property or project generating substantially all of [its] gross income" from that property. "No substantial business" was or is being conducted by Black Bull Run Development, LLC "other than the business of "operating the real property and activities incidental." Therefore, under 11 U.S.C. § 362(d)(3), Black Bull Run Development, LLC is required to file a plan of reorganization within 90 days of the petition date (March 22, 2010), a plan which has a reasonable possibility of being confirmed, or Black Bull Run Development, LLC must commence monthly payments "in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of [OneWest's] interest in [the] real estate." This is the kind of adequate protection the Congress contemplated must be offered to a secured creditor, not the hope of unsold golf memberships in a defunct golf club.

Since, the Debtor has no reasonable prospect of reorganization and is not capable of making the monthly payments, this proceeding should be converted to Chapter 7, and the property liquidated by an appointed trustee.

OneWest Bank is separately filing a demand for adequate protection in this single asset real estate bankruptcy proceeding, and moving for conversion of this proceeding to a liquidation under Chapter 7. The Debtor concedes it has no funds with which to reorganize or to accomplish an orderly liquidation. It is unable to obtain unsecured credit, and its proposals for obtaining secured credit do not adequately protect the security of OneWest Bank or other secured creditors. Therefore, there is cause for conversion under 11 U.S.C § 1112.

MOULTON BELLINGHAM PC

The Court should deny the Debtor's motion for the same reason it denied its first motion to authorize the obtaining of credit and the priming of the senior secured creditors' security interests in the assets of Black Bull Run Development, LLC, and for the additional reasons expressed here.

DATED this 10th day of June, 2010.

          MOULTON BELLINGHAM PC

          By /s/ *GREGORY G. MURPHY*
               Gregory G. Murphy
               Doug James
          Attorneys for OneWest Bank